# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

MUSAAB BALCHI                                    *

     **Plaintiff**                              *

v.                                              *         Civil Action No.:  8:20-cv-02307 PJM

SIX FLAGS AMERICA LP                            *

     **Defendant**                              *

*    *    *    *    *    *    *    *    *    *    *    *    *

## JOINT PROPOSED PRE-TRIAL ORDER

The Parties, by and through their respective counsel, and pursuant to Local Rule 106 hereby submit this Joint Proposed Pre-Trial Order, and state as follows:

A. **Plaintiff's Statement of Facts and Legal Theories**

Plaintiff's claim is one founded on negligence.  In short, on August 13, 2017, Mr. Balchi visited the Six Flags America theme park, owned and operated by Defendant, Six Flags America LP (hereinafter, "Six Flags"), located at 13710 Central Ave, Largo, MD 20721 (hereinafter, "Six Flags Amusement Park").   Near the end of the day, approximately 30 minutes before the amusement rides closed, Mr. Balchi and his wife, Angela Seubert ("Ms. Seubert") entered the queue line for the water slide known as the Bonzai Pipeline (the "Bonzai Pipeline").   After approximately 20 minutes of waiting in line, the two attendants at the top of the waterslide called for additional help due to the long line of riders.  A supervisor then came to the top of the water slide to help load riders into the capsules at the top of the Bonzai Pipeline in an effort to speed up the process; however, the supervisor and attendants rushed the process and ignored the safety protocols that are mandated by Six Flags own standard operating procedures when operating the ride.  An attendant hurried Mr. Balchi into one of six available capsules and no one gave Mr.

Balchi the mandatory verbal instructions of how to position himself in the capsule, as required by Six Flags' standard operating procedure for the Bonzai Pipelines.  The supervisor then shut the door to the capsule without verifying if Mr. Balchi was in the proper and safe riding position, as is also required pursuant to Six Flags' standard operating procedure for the Bonzai Pipelines, and initiated the launch sequence which drops the floor out from underneath Mr. Balchi.  Mr. Balchi then entered a "free fall" inside of the tube instead of sliding down the back of the tube as the design is intended.  At the end of his free fall, Mr. Balchi, who started the Bonzai Pipeline without any injuries, then struck his outstretched heel on the inside of the tube where it began to curve, violently rebounding his right leg above his head, fracturing his leg and tearing his ACL.   Two surgeries and $102,326.47 in medical costs later, Mr. Balchi still has difficulties in his daily life as a result of the injuries he sustained on the Bonzai Pipeline, and his injuries were opined to be permanent.

Six Flags has no independent recollection about any interactions with Mr. Balchi on August 13, 2017.  None of Six Flags' employees, agents or servants remembers the Incident in any capacity. Other than the Patient Care Report filled out by Mr. Wallace, there are no other documents, videos, or testimony Six Flags has regarding Mr. Balchi or the Incident. Furthermore, Defense counsel stipulates that Six Flags has no knowledge of the Incident other than the Patient Care Report.

Mr. Balchi will contend that Six Flags was negligent in this case under multiple legal theories, including but not limited to:

(1) The warning and instruction signs were deficient and did not provide Musaab Balchi with the proper information necessary to safely ride the Bonzai Pipeline waterslide… The four (4) signs installed at the Bonzai Pipelines combined, do not contain sufficient

information to instruct a patron how to safely and properly position themselves inside of the Capsule. Six Flags failed to meet the standard of care in the industry and specifically ASTM sections F2376-13(12.4) and F770-17(5.4)…;

(2) By failing to give verbal instructions to Mr. Balchi, known as the "spiel," Six Flags failed to comply with their own SOP, failed to meet the standard of care in the industry, failed comply with ASTM F2376-13(12.3) and COMAR Sec. 09.12.62.07(I);

(3) By failing to instruct Mr. Balchi about how to stand inside of the Capsule and failing to perform a visual scan to ensure Mr. Balchi was in the proper riding posture before dispatching the Drop Gate, Six Flags failed to meet the standard of care in the industry, comply with the manufacturers SOP, comply with Six Flags SOP, comply with COMAR Sec. 09.12.62.07(G) and comply with COMAR Sec. 09.12.62.04;

(4) Six Flags failed to visually convey the proper loading position for riders even though the manufacturer provided Six Flags with a pictogram for the proper loading position. Six Flags did not clarify the safe riding position with the manufacturer and failed to become familiar with the manufacturer's manual as required by COMAR Sec. 09.12.62.04 and ASTM 770-17(5.1.1); and

(5) Six Flags failed to operate the Bonzai Pipeline waterslide with sufficient staff/employees to properly perform the requirements of its own SOP and COMAR Sec. 09.12.63.06.

**Defendant's Statement of Facts and Legal Theories**

On August 13, 2017, Plaintiff, and his wife, Angela Seubert-Balchi were guests at the Six Flags Amusement Park in Bowie, Maryland. Over the course of more than seven (7) hours, Plaintiff and his wife went on rides available at the Park. Plaintiff consistently noticed there was signage around the Park and at the rides available at the Park.  He knew it was important to read the signage at the park and he read and understood the signage at each ride he rode.  He has admitted he has a complete understanding of the English language and is fully capable of reading and writing in English. Moreover, this was not Plaintiff's first time visiting an amusement and water park.

On the date of the alleged occurrence, at approximately 6:30 P.M. (thirty minutes prior to the park's closure) Plaintiff and Ms. Seubert-Balchi voluntarily went to the subject waterslide, the "Bonzai Pipelines." Which is defined as a "high-thrill ride." There was a long line ahead of them and they waited around 20 to 25 minutes in line. While in line, Plaintiff read the signage posted along the queue line leading to the entry point of the waterslide, which included specific written and pictorial instructions providing directions to patrons how to position their own bodies to ride this high thrill ride. Once near the entry point of the waterslide, both Plaintiff and his wife were each sent to separate individual capsules. At no point did Plaintiff (or his wife) ask any questions of the waterslide's operators despite the now purported lack of a full understanding of what the waterslide entailed for a rider.  Nor did either of them ask anyone else for, or listen for, an explanation of the ride. Once in the capsule Plaintiff assumed a position he viewed and read on a sign while waiting for entry, which said, "cross your hands and cross your legs" and showed somebody pressing his arms and crossing his legs on a slide. Once the capsule door closed, Plaintiff heard, "Capsule Activated, 3, 2, 1" and then the drop-gate opened. It is undisputed that an audio

spiel plays each time during the launch sequence before the drop gate opens to warn and advise the riders how to ride. The exact wording is: "The Capsule is activated, please enter carefully, keep your head back and both arms and legs crossed at all times…Launching in 3..2..1." The automated spiel provides clear instructions to every rider to keep their head back and arms and legs crossed at all times.

      When Plaintiff testified at deposition when he reached the bottom of the waterslide, he was on his right side, facing back up the flume. Plaintiff has provided a multitude of differing and inconsistent versions of events as to what happened when he rode the Bonzai Pipelines. Some versions claim that he entered a complete freefall, other versions he has described include him hanging upside down in the tube of the slide for 15-20 minutes. Regardless of how Plaintiff describes the alleged incident, he has repeatedly acknowledged and admitted that he read and reviewed the signage, not only around the park but while waiting in line for the Bonzai Pipeline. He was given proper notice and instruction on how he should position himself and prepare himself for this high thrill ride. Plaintiff was either contributorily negligent and/or assumed the risk of his injuries. Defendant was not negligent. No breach of any duty proximately caused the alleged injuries. Additionally, Plaintiff, by not following the instructions given to him was negligent and assumed the risk of his injuries.

      Further, is not possible to place oneself into the position Plaintiff's expert, Mr. Pribonic opined Plaintiff was in prior to the drop gate releasing. The mechanisms to cause the injuries sustained by Plaintiff are not present in the scenario described by either Plaintiff or Mr. Pribonic. Lastly, in order for Plaintiff to have sustained the claimed injuries sustained he had to not follow the provided instructions. Defendant will present expert testimony from an expert in biomechanics, Mr. Doug Morr, P.E., which supports each of these positions. If Defendant, Six Flags decides to

use a mock-up and/or model of the Capsule as a demonstrative exhibit at trial, Mr. Morr is expected to confirm the fundamental accuracy of the model or mock-up.

B.  **Counterclaim/Crossclaim/Third-Party Claim**

None.

C.  **Amendments Required of the Pleadings**

None.

D.  **Issues in the Pleadings to be Abandoned**

None.

E.  **Stipulations of Fact**

1.  Defendant, SIX FLAGS AMERICA, LP, owned, operated and maintained the Bonzai Pipeline on August 13, 2017.

2.  Plaintiff Musaab Balchi was a business invitee of Defendant SIX FLAGS AMERICA, LP. at the time of the alleged incident.

3.  All attendants, supervisors, operators, and lifeguards working at the Bonzai Pipeline on August 13, 2017, were agents, employees and/or servants of Defendant SIX FLAGS AMERICA, LP.

4.  All attendants, supervisors, operators, and lifeguards were working with within the scope of his/her employment for Defendant SIX FLAGS AMERICA, LP, on August 13, 2017.

5.  Plaintiff and Defendant stipulate only to the authenticity of the applicable life table for Musaab Balchi from the date of this trial, and its corresponding life expectancy for his age of 46.0 years. Defendant reserves the right to dispute the admissibility of the applicable life table for Musaab Balchi.

6.  The parties stipulate to the genuineness and authenticity of all Medical Records and Bills exchanged during discovery in this matter, contained in the discovery documents labeled "Balchi 0002-0678."[1]

F.  **Damages Claimed and Relief Sought**

Plaintiff claims the following damages:

Past Medical Expenses:   $102,326.47

"Other" Economic Damages: $   2,937.60

Non-economic damages:    Up to Statutory Cap of $830,000.
(*subject to change based on trial
testimony and strategy*)

Defendant, Six Flags seeks a dismissal with prejudice and judgment entered in its favor.

G.  **Exhibit List**

See attached Joint Exhibit List.

Defendant, Six Flags also reserves the right to present and use a model and/or mock-up of the subject Bonzai Pipeline capsule for use at trial and/or to request a view at the Six Flags America Park.

H.  **Witness List**

a.  **Plaintiff's Fact Witness**

i.  Musaab Balchi

2727 29th St., Apt. 736, NW. Washington, DC 20008, 703-342-8285

ii.  Angela Seubert-Balchi

2727 29th St., Apt. 736, NW. Washington, DC 20008, 703-342-8285

iii.  Marquise Sanches, as Corporate Designee of Defendant

---

[1] Defendant will stipulate to the genuineness and authenticity of the Medical Records and Bills. However, this does not constitute any stipulation or agreement as to their admissibility.  Whether the treatment and expenses were necessary, fair, reasonable, and causally related are questions for the jury.

13710 Central Ave, Bowie, MD 20721

b. **Plaintiff's Expert Witness**

i. <u>Joel Fechter, M.D.</u>

Mr. Balchi intends to call Dr. Joel Fechter M.D., to testify as an expert in the field of Orthopedic Surgery.  He is board certified in Orthopedic Surgery.  Dr. Fecther will testify that Mr. Balchi sustained injuries as a result of the incident on August 13, 2017, and detail those injuries as noted in Mr. Balchi's treatment records.  Dr. Fechter will testify regarding his in-person assessment of Mr. Balchi following a medical examination on January 28, 2021, where he opined that Mr. Balchi sustained a multi ligamentous injury to the right knee along with a peroneal nerve injury.

Dr. Fecther will testify that the medical treatment Mr. Balchi received was reasonable, medically necessary, fair and causally related to the injuries sustained in the incident on August 13, 2017.  Mr. Balchi's medical treatment totaling $102,326.47 was fair, reasonable, medically necessary, and causally related to the injuries sustained on August 13, 2017.

Dr. Fecther will also testify as to the need for future medical care, and the cost thereof, that the Plaintiff will need to treat causally related the injuries sustained in the subject incident.  Dr. Fecther is also expected to testify the nature of the treatment, the cost of such treatment and the duration of such treatment, in addition to the Plaintiff's prognosis in the future.  To a reasonable degree of medical probability, Dr. Fechter will testify that Mr. Balchi needs AFO ankle support and yearly follow ups with his treating physician.  Dr. Fechter will also testify that Mr. Balchi sustained a permanent injury as a result of the incident August 13, 2017.

Dr. Fecther will testify consistent with the expert reports he authored in this matter on January 28, 2021 and February 28, 2022, in addition to the Expert Witnesses Designation

submitted in this matter.  All information provided in Plaintiff's expert witnesses designation is subject to being the substance of Dr. Fechter's testimony at trial.

ii. <u>Edward Pribonic</u>

Mr. Balchi intends to call Edward Pribonic, P.E., to testify as an expert in the field of Professional Engineering.  Mr. Pribonic is a registered Professional Engineer in California.  Mr. Pribonic is a mechanical engineer specializing in amusement rides, waterslides, amusement devices and facilities.  Mr. Pribonic will testify to a description of the ride and its mechanisms. Mr. Pribonic will testify to numerous codes and standards that the Defendant violated on August 13, 2017, including applicable COMAR and ASTM standards/regulations.

Among the other testimony detailed in Mr. Pribonic's expert witness designation and expert report, Mr. Pribonic, in short, will testify that, the Defendant's warning and instruction signs were deficient and did not provide Mr. Balchi with the proper information necessary to safely ride the Bonzai Pipeline waterslide, the Defendant failed to give the verbal instructions to Mr. Balchi as required by applicable regulations and its own SOP, the Defendant failed to complete a final visual scan prior to dispatching Mr. Balchi, the Defendant failed to visually convey the proper loading position for riders of the Bonzai Pipeline, the Defendant failed to operate the Bonzai Pipeline waterslide with sufficient staff/employees to properly perform the requirements of its own standard operating procedure, and failed to meet the standard of care in the industry for its operation of the Bonzai Pipeline on August 13, 2017.

Mr. Pribonic will testify consistent with the expert report he authored in this matter, in addition to the Expert Witnesses Designation submitted in this matter.  All information provided in Plaintiff's expert witnesses designation and Mr. Pribonic's deposition is subject to being the substance of Mr. Pribonic's testimony at trial.

Please note, the above is just a brief summation of the expert's testimony.  The experts may testify from any of the information contained in their expert report, supporting documents, or the Plaintiff's expert witness designation.

       c.  **<u>Defendant's Fact Witnesses</u>**

            i.  Marquise Sanches

          ii.  Kendall Wallace, EMT

       d.  **<u>Defendant's Expert Witnesses</u>**

            i.  <u>Douglas R. Morr, P.E.</u>

Six Flags intends to call Mr. Morr as an expert in the field of Professional and Mechanical Engineering with a specialty in Biomechanical Engineering. Consistent with his report, Mr. Morr is expected to testify at trial regarding the design, layout and operation of the Bonzai Pipeline ride/attraction and, given the same, the impossibility for the Plaintiff to have ridden/become injured in the manner and way he and his retained expert have claimed and further that the ride, ridden in accordance with the signage and audio spiel, would not cause Plaintiff's alleged injuries. Further, for Plaintiff to have sustained the injuries he did, he would have had to have ridden in a position where his legs were uncrossed which is contrary to the signage, the spiel and his own testimony. Mr. Morr's opinions are based on his September 12, 2022, inspection and examination of the Bonzai Pipeline, his testing results, a review of the records in this matter and other testimony adduced during the discovery process, as well as his background, training, experience, relevant scientific and medical literature, and independent research. Specifically, Mr. Morr is expected to testify: (1) It is not possible to place oneself into the position Mr. Pribonic opined Mr. Balchi was in prior to the drop gate releasing. (2) The mechanisms to cause the injuries sustained by Mr. Balchi are not present in the scenario described by Mr. Pribonic. (3) The mechanisms to cause the

injuries sustained by Mr. Balchi are not present if ridden as instructed. (4) In order for the mechanisms to cause the injuries sustained by Mr. Balchi to be present, he had to not follow the provided instructions.

Six Flags reserves the right to identify additional opinions should Plaintiff provide new or additional opinions prepared by his experts.

I.  **Deposition Designations**

*Plaintiff:*  Marquise Sanches – Corporate Designee of Defendant

- P. 59 – ln. 12-17

- P. 65 – ln. 5-8

- P. 69 – ln. 3-11

- P. 73 – ln. 1-8

- P. 95 ln. 7 – P. 96 ln 7

- P. 138 – ln. 3 – 17

- P. 140 ln. 21 – P. 141 ln 2

- P. 142 – ln. 14-19

- P. 143 – ln. 5-21

- P. 182 ln 15 – P. 183 ln 3

*Defendant Counter Designations (Marquise Sanches, Six Flags Corporate Designee):*

- Page 64 -65, Ln. 20-21 and 1 -8.

- Page 69, Ln 3-11.

- Page 138, Ln. 3-22.

- Page 168, Ln. 7-20.

  - (*Plaintiff objects to self-serving hearsay and not a counter*)

- Page 170, Ln 1-4.

  - (*Plaintiff objects to self-serving hearsay, not a counter, and relevance*)

*Defendant Designations: Plaintiff, Musaab Balchi*

- Pg. 19, Ln. 19-21

- Pg. 20, Ln 1-3.

- Page 41, Ln. 5-19.

- Page 44, Ln. 17-22

- Page 45, Ln 1-2.

- Page 47, Ln. 1-15.

- Page 51, Ln. 16-22.

- Page 52, Ln. 1.

- Page 66, Ln. 5-14.

- Page 67, Ln. 21-22

- Page 68, Ln. 1-5.

- Page 68, Ln. 14-22

- Page 69, Ln. 1-22.

- Page 70, Ln. 1-3.

- Page 71, Ln. 6-20.

  - *Plaintiff Counter Designation* – Page 70, ln 20-22; Page 71, ln 1-5

**Note**, the Parties respectfully reserve the right to supplement and/or use deposition testimony as impeachment evidence at trial.

J. **Motions**

None pending at this time.

Respectfully Submitted,

THE VALENTE LAW GROUP                    FRANKLIN & PROKOPIK, PC


___/s/___Cole J. Sullivan_____        ___/s/___David A. Skomba_____
John P. Valente, III (Fed. Bar 22233)       David A. Skomba (Fed. Bar 23664)
Cole Sullivan (Fed. Bar 21011)              Jessica B. Pupkin (Fed. Bar 21782)
2200 Defense Highway, Suite 304             Two North Charles Street, Suite 600
Crofton, Maryland 21114                     Baltimore, Maryland 21201
(410) 451-1777                              Tel.: (410) 752-8700
Email: jvalente@jpvlawgroup.com             Email: dskomba@fandpnet.com
Email: csullivan@jpvlawgroup.com            Email: jpupkin@fandpnet.com
*Attorneys for Plaintiff*                   *Attorneys for Defendant*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 21st day of February, 2023, a true and correct copy of the foregoing paper was filed with the Clerk of this Court using the Court's CM/ECF system, which will automatically send e-mail notification of such filing to all attorneys of record.


___/s/___Cole J. Sullivan_____
Cole J. Sullivan